UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIO HURTADO,

v.  Case No. 8:05-cr-518-T-17MSS
    8:08-cv-1724-T-17MSS

UNITED STATES OF AMERICA.
_____

O R D E R

This cause is before the Court on Defendant's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. Doc. CV-1; CR-148. A review of the record demonstrates that the motion must be denied.

Procedural Background

On December 21, 2005, a federal grand jury returned an indictment charging Hurtado and three others with conspiring to possess a listed chemical with intent to manufacture a controlled substance, in violation of 21 U.S.C. § 846. Doc. CR-22. On June 14, 2006, Hurtado pled guilty to the indictment, without a plea agreement. Doc. CR-91; Doc. 131 at 25.

On November 13, 2006, the district court sentenced Hurtado to serve 235 months' imprisonment, to be followed by three years' supervised release. Doc. CR-113; Doc. CR-116; Doc. 134 at 19. Hurtado appealed his sentence arguing that his sentence was procedurally or substantially unreasonable. See Hurtado's brief (Attachment A to Doc. No. 9) and the government's brief (Attachment B to Doc. No. 9)).

On June 28, 2007, the Eleventh Circuit entered judgment affirming Hurtado's conviction and issued its Mandate on July 27, 2007. Doc. CR-147. A petition for writ of

certiorari was denied on January 7, 2008. *Hurtado v. United States,* 128 S.Ct. 880 (2008).

On September 2, 2008, Hurtado timely filed a 28 U.S.C. § 2255 motion to vacate CV-1.

## Factual Background

In October 2005, the Drug Enforcement Administration received information that individuals in Mexico wished to purchase ephedrine, a pre-cursor used to manufacture methamphetamine. PSR ¶ 7. On October 8, 2005, Araceli Payan-Morales made a trip from Mexico to Sarasota, Florida, for the purpose of inspecting and obtaining a sample from a canister of ephedrine. PSR ¶ 8. While attending a meeting in Sarasota, Ms. Payan-Morales made the statement that she was employed by a group that purchased and converted large amounts of ephedrine into methamphetamine. *Id.* Ms. Payan-Morales took a sample of ephedrine from the 25 kilogram canister she inspected in order for her employer in Mexico to consider for possible purchase. *Id.*

On October 19, 2005, Hurtado, Ms. Payan-Morales, and defendant Fortino Salto-Salgado met with a confidential source in Tampa, Florida. PSR ¶ 9. Salto Salgado advised the confidential source that he and others had arrived in Florida from Mexico to purchase ephedrine. *Id.* He was shown and inspected a canister that contained 25 kilograms of ephedrine. *Id.*

On November 4, 2005, Salto-Salgado and another defendant in the case, Nabor Uriostegui, met with the confidential source in Sarasota. PSR ¶ 10. Salto-Salgado had previously negotiated the purchase price of the ephedrine at $50,000 per kilogram canister. *Id.* Salto-Salgado advised the confidential source that Uriostegui was his partner in the ephedrine deal and that Uriostegui was going to supply $200,000 cash to purchase the

ephedrine. *Id.*

On November 12, 2005, during another meeting with the confidential source in Sarasota, Salto-Salgado and Hurtado told the confidential source that they were almost ready to complete the ephedrine purchase. PSR ¶ 11. Salto-Salgado stated that Uriostegui was to supply $200,000 in cash and that other buyers from Atlanta ad California were going to provide additional money in order to purchase another four to eight canisters. *Id.*

On November 14, 2005, Salto-Salgado advised the confidential source that Uriostegui wanted to purchase two canisters of ephedrine, initially. PSR ¶ 12. Salto-Salgado advised the confidential source that until after the initial purchase went well, the other buyers were hesitant to purchase any ephedrine because the DEA sometimes posed as sellers of ephedrine. Id.

On November 15, 2005, Hurtado, Salto-Salgado, Payan-Morales, and Uriostegui met with the confidential source in Sarasota. PSR ¶ 13. Uriostegui and Payan-Morales turned the vehicle they were driving over to an undercover detective so that it could be loaded with two 25-kilogram canisters of ephedrine. *Id.* Salto-Salgado advised the confidential source that there was $100,000 in cash under the front seat. *Id.* The undercover detective drove the vehicle to a secure location, where the $100,000 cash was found and removed from the vehicle. Two 25-kilogram canisters of "sham" ephedrine were loaded into the vehicle's trunk as instructed by Salto-Salgado. *Id.* The vehicle was then returned to Salto-Salgado. *Id.* Salto-Salgado then turned the vehicle over to Uriostegui and Payan-Morales. *Id.* Hurtado and Salto-Salgado followed Uriostegui and Payan-Morales in another vehicle. *Id.* The vehicles traveled together toward Uriostegui's residence in Frostproof, Florida, and were under surveillance at the time. PSR ¶ 14. When the vehicles

neared Uriostegui's residence, a traffic stop ensued wherein all occupants of the vehicles were placed under arrest. *Id.*

Discussion

Grounds One and Two

Hurtado complains in Ground One that his plea was not made knowingly and voluntarily and that the court did not notify him of certain rights he was giving up by pleading guilty. Doc. CV-1 at 5. He complains in Ground Two that he did not understand the nature of the charge against him. *Id.* In Ground Four, Hurtado claims ineffective assistance of counsel in that counsel failed to object to all of the above grounds, which the Court interprets as Hurtado's claiming that everything he complains about in every ground listed is that his counsel was ineffective. *Id.* at 6. The record demonstrates that during the plea colloquy the court fully explained Hurtado's rights to him. The government filed a notice of maximum penalty, elements of the offense, personalization of elements and factual basis on May 9, 2006. Doc. CR-72.

Hurtado claims that his plea was unknowing and involuntary because the court did not inform him that in rendering a plea of guilty he would be waiving his right to confront witnesses, his right to have effective assistance of counsel, and his right against self-incrimination. Doc. CV-1 at 5. Nothing in Hurtado's plea colloquy, however, suggests that his decision to plead guilty was anything other than knowing and voluntary. Even if his counsel was not clear in explaining to him the ramifications of pleading guilty, the Court reviewed all of these issues with him during the change of plea hearing. Doc. CR-131 (Plea Transcript). Hurtado is not entitled to relief on this ground because he understood the nature of the charges he was pleading guilty to, because he had to discuss the

4

consequences of the plea with his counsel prior to the entry of his plea, and he affirmatively indicated he wished to plead guilty because he was guilty. *Id.* Hurtado's claim lacks merit.

Pursuant to Fed. R. Crim. P. 11, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005). At the change of plea hearing, the Court ascertained Hurtado's competency to enter into a plea. Doc. CR-131 at 7-8. Hurtado confirmed that he was not forced or threatened in any way to enter his guilty plea. *Id.* at 7, 10, 13, 17. Hurtado agreed that he understood the charge, was satisfied with the work his attorney had performed for him, that he had not asked his counsel to do anything for him that he failed to do. When the court asked Hurtado if he had any problems, issues or questions at all about the work his attorney had done in his case, he answered, "No." *Id.* at 8. Hurtado understood that after the district judge accepted his guilty plea, that it would be "almost impossible" for him to withdraw his plea, and the judge at the change of plea hearing advised him to "not accept it until you understand what you're doing; do you understand that?" The defendant replied, "Yes." *Id.* at 6, 23.

Hurtado understood the rights he was giving up, including: 1) the right to vote, hold public office, serve on a jury, possess a firearm (*id.* at 11); 2) his right to a jury trial and to confront or present witnesses (*id.* at 16-17), and 3) his right to travel freely between the United States and Mexico (*id.* at 11). The court advised Hurtado that the offense he was pleading to carried a prison sentence of up to 20 years, a $250,000 fine, a term of supervised release of up to three years and a special assessment of $100. *Id.* at 12.

Hurtado told the court that he understood these consequences. Id.

Hurtado confirmed during the plea colloquy at the change of plea hearing, that he understood the elements of his offense and agreed with the government's recitation of the factual basis. Doc. CR-131 at 18, 22-23; see Doc. CR-72. Hurtado agreed he had no questions concerning the consequences of pleading guilty, Doc. CR-131 at 23, and that he was pleading guilty because he was in fact, guilty. *Id.* at 25. The Court then found that Hurtado's guilty plea was knowing, intelligent and voluntary, and was adequately supported by the fact that the essential elements could be met. *Id.* at 25-26.

The two-pronged Strickland test is applicable to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). As applied to the plea situation, the first prong of *Strickland* remains the same in that the attorney's conduct must fall within the range of reasonable conduct. *Hill*, 474 U.S. at 58. Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, however, and in the former case, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between entering a guilty plea and going to trial. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). To impart such an understanding to the accused, counsel merely must make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer counsel's informed opinion as to the best course to be followed in protecting the interests of the client. *Id.*

The second prong of the *Strickland* test focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill,* 474 U.S. at 59. In other words, in order to satisfy the prejudice requirement, the petitioner

claiming ineffective assistance of counsel during the plea process must show that there is a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Id.*

The record establishes that Hurtado fully understood the consequences of his guilty plea and the nature of the charges. The Court addressed the core concerns of Rule 11, and Hurtado's admissions at the plea colloquy attest that he voluntarily and knowingly pled guilty to the drug conspiracy. *See Monroe*, 353 F.3d at 1349. Even if this Court were to find deficient performance by Hurtado's counsel, he is entitled to no relief because he cannot meet the *Strickland* prejudice prong. The record demonstrates that the Court conducted a thorough Rule 11 plea colloquy, establishing that Hurtado understood the consequences of his guilty plea. Therefore, Hurtado's plea is valid, as the record amply demonstrates his decision to plead guilty was informed, knowing and voluntary. Because Hurtado fails to demonstrate that he suffered any prejudice and his claims lack merit, he is entitled to no relief as to his claims.

## Ground Three

Hurtado complains that this court lacked jurisdiction. Hurtado waived any challenge to the Court's jurisdiction over his person when he failed to assert that challenge prior to trial. An objection to the Court's jurisdiction over the person is an objection based on the institution of the prosecution that is waived if it is not affirmatively asserted. See Fed. R. Crim. P. 12(b)(3)(A); *United States v. Grote*, 632 F.2d 387, 388-89 (5th Cir. 1980); *United States v. Kahl*, 583 F.2d 1351, 1356 (5th Cir. 1978).

Even if Hurtado had challenged personal jurisdiction prior to trial, the Court would have found against him. "A federal district court has personal jurisdiction to try any

7

defendant brought before it on a federal indictment charging a violation of federal law." *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003); *see also United States v. Alvarez-Machain,* 504 U.S. 655, 659-70 (1992); *United States v. Noriega*, 117 F.3d 1206, 1213-14 (11th Cir. 1997).

Because the indictment in this case "charged . . . [the petitioner] with a violation of . . . [the] law[s] of the United States, 'the district court [had] jurisdiction over the case . . .'" *United States v. Aguilar*, 196 Fed. Appx. 837, 839 (11th Cir. 2006) (per curiam) (quoting *McCoy v. United States*, 266 F.3d 1245, 1252 n.11 (11th Cir. 2001)). Accordingly, the Court gained jurisdiction over Hurtado's person when he was brought before the Court on an indictment.

Because the indictment charged a federal offense, the district court had subject matter jurisdiction. Doc. CR-22. The Eleventh Circuit has found that "an indictment charging that a defendant violated a law of the United States gives the district court jurisdiction over the case and empowers it to rule on the sufficiency of the indictment." *McCoy v. United States*, 266 F.3d 1245, 1252 (11th Cir. 2001); *accord Alikhani*, 200 F.3d at 734. In *Alikhani*, the Eleventh Circuit affirmed the district court's denial of coram nobis relief, stating that, because the indictment had charged the defendant with "violating 'laws of the United States,' [18 U.S.C. § 3231] on its face empowered the district court to enter judgment upon the merits of the indictment." 200 F.3d at 734. Here, too, the indictment charged a federal criminal offense (a violation of 21 U.S.C. § 846), so the district court had jurisdiction. Therefore, this claim is without merit.

Ground Four

8

Hurtado claims that his counsel was ineffective for failing to object to "all the above grounds," which the Court interprets as Hurtado's claiming that his counsel was ineffective in grounds one, two and three, i.e., by not informing Hurtado that it was his constitutional right to confront witnesses and that he had a right against compelled self-incrimination; by his counsel not explaining the nature of the charges to him before he pled guilty; and that his counsel should have made objections to the jurisdiction, respectively. Hurtado also complains that his counsel was ineffective for not raising an entrapment defense, not arguing minimal role at sentencing, not arguing drug calculation, and for failing to raise lack of participation in the overt acts. All of Hurtado's ineffective assistance of counsel claims are without merit as more fully outlined below.

Under the two (2) prong analysis announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), a section 2255 movant asserting ineffective assistance claims must show (1) that his attorney's performance fell below an objective standard of reasonable professional assistance, and (2) that he was prejudiced by that deficient performance. *Id.* at 687. A petitioner's failure to prove both of these prongs is fatal to any request for collateral relief. *Id.* at 697 ("there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one").

For an attorney's performance to be deemed constitutionally deficient, a petitioner bears the "heavy" burden of showing that his counsel's conduct fell outside the wide range of professionally competent assistance under the particular facts of his case. *Id.* at 690; *Chandler v. United States*, 218 F.3d 1305, 1313-14 (11th Cir. 2000) (en banc). In other words, "a petitioner must establish that no competent counsel would have taken the action

that his counsel did take." *Chandler*, 218 F.3d at 1315. The issue in this regard "is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id.* at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

In undertaking this analysis, courts "must avoid second-guessing counsel's performance," must avoid "using 'the distorting effects of hindsight,' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" *Id.* at 1314, 1316 (quoting *Strickland*, 466 U.S. at 689). Further, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* (quoting *Strickland*, 466 U.S. at 689-90). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

With respect to the second prong of the *Strickland* analysis, a petitioner must demonstrate that there is a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Conclusory allegations propounded by a petitioner in this regard do not meet this standard and do not merit relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (en banc).

<u>Hurtado's Claim that Counsel Failed To Object to all of the Above Grounds</u>

Hurtado acknowledged that he was waiving the rights attendant to a jury trial, including the right to confront witnesses. Doc. CR-131 at 16-17. The court specifically informed him that if the government were to bring witnesses to testify against him, that he

would have the right to confront the witnesses by cross-examination, and that if he wished to bring his own witnesses, the court would pay for them to appear. Doc. CR-131 at 16.

There is no question that a defendant who enters a guilty plea waives numerous constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969); *United States v. Bushert*, 997 F.2d 1343, 1347 (11th Cir. 1993). Those rights include the right to a jury trial, the right to call witnesses, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination. *Boykin*, 395 U.S. at 243; *Bushert*, 997 F.2d at 1347; *see also Brady v. United States*, 397 U.S. 742, 747-48 (1970).

Regarding Hurtado's knowledge of the nature of charges, Hurtado clearly was aware of the nature of the charges against him as evidenced by the government's filing of a Notice of Essential Elements, Penalties, and Factual Basis. Doc. CR-72. The Court also explained to Hurtado during the plea colloquy that there were certain proof elements the government must establish. Hurtado indicated that he understood those elements. Doc. CR-131 at 17-18. After the facts had been established, the following took place between Hurtado, the Court, and Mr. Marzullo, Hurtado's court appointed counsel:

| | |
|---|---|
| The Court: | Do you agree that these facts would be sufficient to satisfy the legal elements of the offense, which I read to you a few moments ago? |
| The Defendant: | Yes. |
| The Court: | Mr. Marzullo, do you agree that the facts are sufficient to satisfy the legal elements? |
| Mr. Marzullo: | Yes, ma'am. |
| The Court: | To this point, do you have any |

11

> questions about the consequences
> of pleading guilty?
>
> The Defendant:     No.

Doc. CR-131 at 23. The above exchange demonstrates that Hurtado understood what he was doing and that his claim, therefore, lacks merit.

Regarding the jurisdictional claim, in order to succeed on such a jurisdictional challenge, Hurtado bears the burden of showing that his counsel's performance fell below an objective standard of reasonable professional assistance, and that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). As Hurtado's jurisdictional argument is without merit, his counsel did not perform in a constitutionally deficient manner in failing to raise it.

### Hurtado's Claim that Counsel Failed To Raise any Entrapment Defense

Hurtado alleges his counsel provided ineffective assistance by failing to present an entrapment defense at trial. Hurtado pled guilty to the offense, thereby nullifying any need for an "entrapment" defense. The Supreme Court has held that entrapment requires the defendant to establish that the government in some way "induce[d the] commission of the crime." *Jacobson v. United States*, 503 U.S. 540, 548 (1992). Moreover, the government's inducement of the crime must possess some "element of persuasion or mild coercion." *United States v. Andrews*, 765 F.2d 1491, 1499 (11th Cir. 1985). This claim has no merit.

### Hurtado's Claims that Counsel Failed to Argue Sentence Reduction for Minimal Role
### Counsel Failed To Raise Lack of Participation in the Overt Acts

Hurtado claims that his counsel failed to argue for a sentence reduction for minimal role in the offense and that counsel did not raise his lack of participation in the conspiracy. These claims are also without merit. Hurtado's counsel specifically argued at sentencing

for the court to find that Hurtado played a minimal role by stating to the court, "Your honor, the next objection is requesting that the court provide a minimal role for Mr. Hurtado." Doc. CR-134 at 8-9. Hurtado's attorney told the court that Hurtado was not a significant player, or even an average player. *Id.* at 9. His attorney advised the court that Hurtado was just a tag-a-long. *Id.* at 9. The court requested that the probation officer state its position. *Id.* at 9. The probation office responded as follows:

> Your Honor, it's the position of the probation office that he does not deserve a mitigating role adjustment. He was present during two of the four meetings, traveled with the other defendants.
>
> He was present when they exchanged the money and the ephedrine. He was actually staying at one of the houses with them. You can only assume he knew what was going on.

*Id.* at 9.

The court then made the statement that the facts indicated that Hurtado knew or should have known what was going on because of his associations and because of his presence at the meetings. *Id.* at 9-10.

Hurtado cannot establish that he was prejudiced because the record does not establish that this Court would have imposed a lesser sentence had counsel do anything differently. This Court adopted the position of the probation office and overruled Hurtado's objections. *Id.* At 14. Because the record does not establish that his sentence would have been different, Hurtado cannot meet his burden of demonstrating prejudice under *Strickland. See United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir.) (defendant contending that court violated his constitutional rights by increasing his sentence based on judge-found facts under a mandatory application of the sentencing guidelines cannot establish prejudice to his substantial rights under the third prong of plain-error review if

13

record provides no reason to believe sentence would have been different), *cert. denied*, 125 S. Ct. 2935 (2005). Hurtado has not shown deficient performance on the part of counsel or that he sustained prejudice.

<u>Hurtado's Claim that Counsel Failed To Argue Drug Calculation in Reverse Strings [sic]</u>

At the change of plea hearing, and after the factual basis was provided to the Court, the Court inquired regarding the quantity of Ephedrine that was the subject of the conspiracy. Doc. CR-131 at 21. The Court specifically asked if there was an agreed upon quantity of Ephedrine. *Id.* at 21. The Court was advised that the final delivery was to be two 25-kilogram canisters of Ephedrine. *Id.* at 21. Hurtado advised the court that he had read the facts as set forth in the Notice of Essential Elements or had them read to him in Spanish. *Id.* at 22. He agreed to the facts. *Id.* at 22. He was asked if he had any dispute at all about the facts. *Id.* at 23. He stated that he did not. *Id.* at 23. He agreed that the facts would be sufficient to satisfy the legal elements of the offense. *Id.* at 2. He agreed that he was pleading guilty because he was guilty. Id. at 25.

This Court applied the law to uncontested facts concerning the drug quantity and Hutado was sentenced at the low end of the guidelines and was not sentenced beyond the statutory maximum. This Court correctly determined his sentence based on the quantity of drugs to which he had admitted. *See United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005). Counsel did not perform deficiently by failing to litigate these claims because they are legally flawed and lack merit. Counsel cannot be deemed to have performed deficiently by failing to address an issue that reasonably would have been considered to be without merit. *See Davis v. Singletary*, 119 F.3d 1471, 1476 (11th Cir. 1997); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994); *Pitts v. Cook*, 923 F.2d 1568, 1572-74

(11th Cir. 1991); *Thompson v. Wainwright*, 787 F.2d 1447, 1459 n.8 (11th Cir. 1986).

Ground Five

Hurtado contends that judicial bias resulted in structural error in the sentence imposed.

Hurtado's argument is difficult to understand. It appears that he is trying to articulate that the judge as being biased against him, and that the judge should recuse herself. In reality, he is suggesting that the judge be disqualified because she denied all of his requests for downward departure and overruled all of the objections made by his attorney at sentencing. It appears that he is suggesting that the judge should be disqualified because the judge ruled against him concerning the requests for downward departure and other sentencing objections. He is incorrect.

Title 28, United States Code, Section 455(a) mandates recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned." The standard under section 455(a) is an objective one, focusing on a hypothetical, reasonable observer: the test is whether an objective, disinterested, lay observer fully informed on the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality. *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988). Disqualification is required only if it appears that the judge harbors an aversion, hostility, or disposition of a kind that a fair-minded person could not set aside when judging the dispute. *Liteky v. United States*, 510 U.S. 540 (1994) (Kennedy, J., concurring in the judgment). Only personal bias, stemming from "extrajudicial sources," is sufficient to justify recusal of a judge under section 455(a), *Jaffree v. Wallace*, 837 F.2d 1461, 1465 (11th Cir. 1988), unless "'pervasive bias and prejudice is shown by otherwise judicial conduct,'" *First*

15

*Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 825 F.2d 1475, 1487 (11th Cir. 1987).

A motion for recusal ordinarily may not be predicated upon a judge's rulings in the same case. *Loranger v. Stierheim*, 10 F.3d 776, 780 (11th Cir. 1994). Hurtado's allegation of bias in this case arises from rulings that the district court made during proceedings in his criminal case. Doc. CV-2 at 19. He contends that because the sentencing judge denied the requests for downward departure and overruled all of his objections that the judge was harboring a serious bias against him. *Id.*

Nothing in the record suggests that the undersigned district court judge harbored any bias against Hurtado. Although Hurtado contends that the district court's rulings, particularly the rulings relating to a downward departure and the overruling of all of his objections, were incorrect due to the court's supposedly being biased against him, nothing in the record supports Hurtado's contentions, much less that she harbored a personal or pervasive bias that infected her rulings and would have required her recusal. Hurtado has not established any entitlement to relief based on any of his ineffective assistance of counsel claims.

The Court finds that Hurtado's arguments in his reply are not persuasive.

Accordingly, the Court orders:

That Hurtado's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255  Doc. CV-1; CR-148) is denied.  The Clerk is directed to enter judgment against Hurtado and to close this case.

**CERTIFICATE OF APPEALABILITY AND**
**LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on January 26, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

AUSA: James C. Preston, Jr.
Antonio Hurtado, pro se